**M.A., Appellant,**

**v.**

**Daniel J. BRABENDER, Jr., an individual and W. Richard Cowell, John R. Wingerter, Lee C. Fuller, Ted J. Padden, Donald J. Rogala, Bradley K. Enterline, Mary Payton Jarvie, individuals and partners, and Carney & Good, a professional partnership, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 17, 2003.

Filed Dec. 23, 2003.

Alexander J. Jamiolkowski, Pittsburgh, for appellant.

James Schadel, Pittsburgh, for appellees.

Before: LALLY–GREEN, TODD, and TAMILIA, JJ.

TODD, J.

¶ 1 M.A. appeals from the order of the Erie County Court of Common Pleas granting Appellees' motion for judgment on the pleadings. We affirm.

¶ 2 The relevant facts of this case are as follows: M.A. is a citizen of Iraq who immigrated to the United States in 1994. He is a graduate of the University in Baghdad with a bachelor's degree in mechanical engineering. Following graduation, M.A. entered the Iraqi army to serve his required term. While in the army, he was selected to do some repair and rebuilding work on a nuclear reactor in Baghdad that had been destroyed by an enemy strike during Iraq's war with Iran. Because M.A. refused to take this assignment, he was taken into custody and placed in a special security building. From the time he was taken into custody until he was released over a year later, M.A. was tortured, abused, and held in a small, dark cell. M.A. suffered various forms of torture at the hands of the Iraqi guards, including hanging upside down, hanging by clasped hands behind his back, denial of food, and by repeated beatings. After approximately one year, M.A. again was approached to work at the reactor site. When he refused this second time, a torture device was placed into his penis, causing heavy bleeding and excruciating pain. On another occasion, he was forced to sit on an empty soda pop bottle, and later was beaten with the bottle after it was removed from his rectum. At least one of the guards also extinguished his cigarette on M.A.'s penis. Since he was

tortured in Iraq, M.A. has been unable to have an erection, and suffers from incontinence. He is incontinent most often during the night and in cold weather, and typically wears a diaper on those occasions.

¶ 3 After immigrating to the United States, M.A. was charged in February 1995 with criminal solicitation to commit indecent assault, indecent assault, and corruption of a minor for an incident which, according to the Commonwealth, involved a 10–year–old boy sitting on M.A.'s lap while M.A. gyrated his hips and rubbed his allegedly erect penis against the child's clothed buttocks. M.A. was wearing a diaper at the time the alleged incident occurred. He hired Appellee, Daniel J. Brabender, Jr. and his law firm to represent him.

¶ 4 According to M.A., he told Brabender, through his interpreter,[1] that he was innocent and did not commit any of the crimes charged. Brabender never asked M.A. about his background or for any information or facts, such as his impotence or incontinence, which may have helped M.A. prove his innocence. Instead, Brabender sought a plea agreement in return for probation on the charges. On Brabender's advice, M.A. entered into a plea agreement on February 13, 1995 in which he agreed to plead guilty to indecent assault and corruption of the morals of a minor in exchange for the Commonwealth's agreement to withdraw the solicitation charge. Pursuant to the plea agreement, on September 6, 1995, M.A. entered a plea of guilty to one count of indecent assault and one count of corruption of the morals of a minor. The solicitation charge was withdrawn. M.A. was then sen-

---

**1.** M.A. spoke very little English when he arrived in the United States, having only taken English as a course in high school. After arriving in Erie, he was taken to the International Institute of Erie, where he was given a counselor to help him adjust to his new country. This counselor served as his interpreter when he met with his attorney and in court.

tenced[2] on October 10, 1995 to an aggregate term of 1 to 5 years incarceration and placed in a sex offender program. Brabender's representation of M.A. terminated after he filed a motion to modify and reduce M.A.'s sentence, which was denied. M.A. ultimately served the maximum sentence of five years incarceration because he refused to complete the second part of the sex offender program, which required him to admit that he committed the acts to which he pled guilty.

¶ 5 While M.A. was in the process of appealing his conviction in our state courts, the Immigration and Naturalization Services ("INS") started deportation proceedings against him in light of his guilty plea and incarceration on charges involving moral turpitude. An INS hearing was held on October 21, 1997 and M.A. was ordered to be deported. On February 17, 1998, M.A. filed a petition for a writ of *habeas corpus* in the United States District Court for the Western District of Pennsylvania seeking relief from INS detention. Although a magistrate judge initially recommended that his petition be denied, it was subsequently recommended that the petition be granted on the basis that Brabender had provided ineffective assistance of counsel to M.A., which rendered his guilty plea invalid. By order dated August 28, 2001, the district court by the Honorable Sean J. McLaughlin granted M.A.'s *habeas corpus* petition and M.A. was released from INS detention.[3]

¶ 6 M.A. filed the instant lawsuit on February 15, 2002, claiming that Brabender and his law firm committed malpractice in their representation of him. On December 17, 2002, the Erie County Court of Common Pleas granted Brabender's motion for judgment on the pleadings on the basis that the applicable statute of limitations had expired. This timely appeal followed, in which M.A. now presents the following issue for our review:

> Whether, under Pennsylvania law and the due process clause of the United States and Pennsylvania constitutions, a plaintiff should be granted two years after his or her cause of action for legal malpractice in a criminal matter accrues within which to file a lawsuit against the attorney, instead of two years after the legal relationship between the client and the attorney terminates.

(Appellant's Brief at 4.)

¶ 7 In its opinion of December 17, 2002, the trial court, by the Honorable William R. Cunningham, President Judge, stated as follows:

> This Court is sympathetic to Plaintiff's argument that the statute of limitations should not begin to run until August 28, 2001 when Plaintiff's federal Writ of Habeas Corpus was granted. Plaintiff makes a powerful argument [that] all of the elements for a malpractice action do not exist until there is appellate exoneration. However, this argument was specifically considered and rejected by the Pennsylvania Supreme Court in *Bailey v. Tucker*, [533 Pa. 237, 621 A.2d 108 (1993)]. Hence this Court is dut[y]bound to follow the *Bailey* precedent.

(Trial Court Opinion, 12/20/02) Although, as did the trial court, we recognize the strength of M.A.'s argument that his mal-

---

**2.** The trial court did not provide a translator for M.A. at the plea hearing or require that the proceedings be translated verbatim, which they were not. Although M.A.'s counselor was present, it is not clear that he himself fully understood what was transpiring.

**3.** By this time, M.A. had served all of his state court sentence and was no longer in state custody.

practice claim did not arise until he was granted *habeas corpus* relief, we are likewise bound to follow the decisions of our Supreme Court. Under *Bailey*, as M.A.'s counsel essentially conceded at oral argument in this appeal, it is clear that, in criminal legal malpractice actions, the statute of limitations begins to run on the date of sentencing, or no later than the termination date of the attorney/client relationship.[4] In this case, it is undisputed that M.A. was sentenced on October 10, 1995 and that Brabender's representation ended later that month in 1995. M.A. instituted this lawsuit over five years after the statute of limitations began to run pursuant to *Bailey*, well after the two-year limitations period allowed for negligence-based claims, and beyond the four-year limitations period applicable to contract claims. His claim was, however, filed within two years of the date on which M.A.'s federal habeas corpus petition was granted, August 28, 2001. Absent contrary direction from our Supreme Court, we are obligated to follow *Bailey*, and M.A.'s malpractice claim is, therefore, untimely.

¶ 8 Order entering judgment **AFFIRMED.**

---

4. By contrast, in civil legal malpractice actions, the statute of limitations begins to run either at the time the harm is suffered or alternatively at the time the alleged malpractice is discovered. *See Robbins & Seventko Orthopedic Surgeons Inc. v. Geisenberger,* 449 Pa.Super. 367, 674 A.2d 244 (1996).