J-A24027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RICHARD GEORGE SCHMIDT, M.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN LEE LEBOON AND CASSANDRA LEBOON | |
| Appellants | No. 3484 EDA 2014 |

Appeal from the Order Entered on November 24, 2014
In the Court of Common Pleas of Bucks County
Civil Division at No.: 2013-00951

BEFORE: PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED NOVEMBER 09, 2015**

Steven LeBoon ("LeBoon")[1] and Cassandra LeBoon appeal the November 24, 2014 order in which the trial court resolved several discovery motions. We affirm.

A prior panel of this Court summarized the initial factual history of this case as follows:

LeBoon suffered from work related injuries when, on May 6, 2009, management employees of the Alan McIlvain Company attempted to perform the tasks of rank and file workers during

---

[*]     Retired Senior Judge assigned to the Superior Court.

[1]     Although both Steven and Cassandra LeBoon are the defendants/appellants in this matter, Steven LeBoon's injury precipitated all of the litigation in this case. Therefore, we use LeBoon to refer to the defendants/appellants in the instant litigation and refer directly to Cassandra LeBoon when relevant.

the course of a labor stoppage. While removing lumber from a cutting table, LeBoon injured his right shoulder and later alleged injuries to his back and left shoulder. On May 12, 2009, LeBoon filed a Workers' Compensation claim, [in] which LeBoon allege[d] Liberty Mutual (his employer's Workers' Compensation carrier) denied on the basis that LeBoon had no medically documented injury. Thereafter, LeBoon consulted his personal physician and, relying on his health insurance, determined to undergo surgery on June 11, 2009. Informed of the pending surgery, Liberty Mutual requested that LeBoon undergo an independent medical examination ("IME"). Thereafter, IMX Medical Management Services, acting on Liberty Mutual's behalf, scheduled the IME with Richard George Schmidt, M.D., to take place on June 19, 2009. Dr. Schmidt is a board-certified orthopedic surgeon.

Following the examination, Dr. Schmidt completed a Bureau of Workers' Compensation Physician's Affidavit of Recovery attesting that LeBoon was able to return to work. Subsequently, Liberty Mutual introduced that affidavit at Workers' Compensation hearings held on July 8, 2009, and October 14, 2009. In addition, Dr. Schmidt testified at a deposition convened in conjunction with the Workers' Compensation hearing in October. [Dr.] Schmidt noted that he had examined magnetic resonance images of LeBoon's shoulder, neck, and spine and observed post-surgical changes in the shoulder as well as degenerative changes in the spine, but saw no acute changes or disc herniation. Although [Dr.] Schmidt conceded that LeBoon suffered a work place injury (as LeBoon's employer had also conceded), he opined that the injury had resolved by the time he conducted the IME. He described LeBoon's injuries as a transient strain of the shoulders, neck, and lower back and suggested that LeBoon's complaints were indicative of "symptom magnification." [Dr.] Schmidt showed no awareness of LeBoon's operative report, which documented actual tearing in LeBoon's shoulder.

Following the proceedings, on December 31, 2009, Workers' Compensation Judge Bruce K. Doman ("WCJ") rendered a decision granting LeBoon's claim for Workers' Compensation benefits. In his Findings of Fact in support of the decision, Judge Doman found [Dr.] Schmidt's testimony credible in part, to the extent that [Dr.] Schmidt found the work-related injuries of LeBoon's left shoulder and cervical and lumber spines to be resolved prior to the date of the IME. The WCJ found [Dr.] Schmidt's testimony not to be credible concerning LeBoon's right

- 2 -

shoulder, as it appeared to ignore the diagnostic studies and operative reports compiled by LeBoon's treating physicians. In addition, the WCJ accepted documentation of LeBoon's average weekly wage at the time of injury and awarded him compensation for total disability to be paid on a monthly basis over the remainder of LeBoon's projected life span.

Based on the award, LeBoon elected to settle his claim for a lump sum payment of $185,000, subject to the terms of a Compromise and Release Agreement by Stipulation Pursuant to Section 449 of the Workers' Compensation Act. In paragraph 18, LeBoon, with the aid of counsel, inserted the following language purporting to limit the scope and effect of the Agreement:

> This Agreement does not impact in any manner any other legal matter or administrative proceeding involving the parties. This agreement fully and completely resolves any workers' compensation claim involving the Claimant, including the work injury of May 6, 2009.

Compromise and Release Agreement by Stipulation Pursuant to Section 449 of the Workers' Compensation Act, 5/6/10, at 3 ¶18.

Following payment of the award, LeBoon commenced [a] civil action, *pro se*, against Liberty Mutual, IMX and Dr. Schmidt, alleging tortious conduct surrounding the manner in which each had fulfilled its respective role in the evaluation and processing of LeBoon's Workers' Compensation claim.[1] Although LeBoon's Complaint did not differentiate his causes of action by count, it did include summary assertions of intentional infliction of emotion distress, negligent infliction of emotional distress and fraud, all arising from the mishandling of his Workers' Compensation claim. [As part of a claim that Dr. Schmidt inflicted emotional distress by deviating from the standard of care, LeBoon submitted a certificate of merit signed by Theron C. Male, Ph.D.] It also specified harm resulting from LeBoon's loss of income during the claim's disposition process including the loss of his home and his car, and his family's dependency on public welfare for sustenance. All defendants denied LeBoon's allegations and each filed preliminary objections in the nature of demurrer on the grounds, *inter alia*, that any conduct otherwise actionable in tort was subsumed in the remedy of the Workers' Compensation Act. The trial court, the Honorable Clyde W.

Waite, granted the defendant's respective preliminary objections and dismissed LeBoon's complaint with prejudice.

> [1] LeBoon had previously commenced an action in the United States District Court for the Eastern District of Pennsylvania naming IMX and Dr. Schmidt as defendants. Shortly after commencing that action LeBoon amended the complaint, adding Liberty Mutual as a defendant. By order of April 18, 2011, the court dismissed LeBoon's action without prejudice.

***LeBoon v. Schmidt, IMX Med. Mgmt. Svcs., Inc., & Liberty Mutual Ins. Co.***, 2235 EDA 2011, slip. op at 2-5 (Pa. Super. Feb. 28, 2012).

LeBoon appealed the dismissal of his complaint to this Court, and we affirmed the trial court on February 28, 2012. LeBoon then filed a petition for allowance of appeal with our Supreme Court, which was denied on August 16, 2012.

On February 13, 2013, Dr. Schmidt filed an initial complaint against LeBoon. On May 31, 2013, Dr. Schmidt filed an amended complaint in which he asserted claims of wrongful use of civil proceedings and abuse of process. Dr. Schmidt also sought counsel fees and an injunction to prevent LeBoon from filing further lawsuits against Dr. Schmidt in relation to LeBoon's workers' compensation claim, from issuing subpoenas for Dr. Schmidt's testimony or documents related to the workers' compensation claim, and from contacting Dr. Schmidt.[2] As suggested by the foregoing history, the

---

[2] On March 12, 2013, LeBoon filed a new federal lawsuit against Dr. Schmidt, which was dismissed for failure to state a claim.

filing of the complaint initiated a flurry of activity and over two hundred docket entries have been made in the intervening time.

The trial court summarized the most recent procedural history of this case as follows:

> On November 20, 2014, [the trial court] held a hearing to resolve ten discovery motions filed by both parties to this litigation. [The trial court] then entered an Order on November 24, 2014 ("the November 24th Order") ruling on each discovery motion from the November 20th hearing. As is relevant to this Appeal, the November 24th Order: (i) granted [Dr. Schmidt's] motion to compel Theron C. Male, Ph.D. to testify regarding his psychological care and treatment of [LeBoon]; (ii) granted [Dr. Schmidt's] motion to compel Steven Goldflam to produce [LeBoon's] tax returns for the years 2007-2013; (iii) granted [Dr. Schmidt's] motion to overrule [LeBoon's] objections to over twenty interrogatories; (iv) granted [Dr. Schmidt's] motion to overrule [LeBoon's] objections to seventeen requests for production of documents; and (v) granted [Dr. Schmidt's] motion to compel both [LeBoon and Cassandra LeBoon] to appear for a deposition.
>
> On November 26, 2014, [LeBoon] filed a Notice of Appeal from that Order. . . .

Trial Court Opinion ("T.C.O."), 12/26/2014, at 1 (unnumbered).

The trial court did not order, and LeBoon did not file, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a).

LeBoon raises the following issues for review:

1. Were [LeBoon's] rights under 45 CFR 1644.512(e), Pa.R.C.P. 4033.1, Pa.R.C.P. 4011, Pa.R.A.P. 313, 42 Pa.C.S.A. § 5929 and 42 Pa.C.S.A. § 5944 violated due to [the trial judge's] err[or] when he granted [Dr. Schmidt's] Motion to Compel Theron C. Male to testify about his psychological care and treatment of [LeBoon]?

2. Were [the LeBoons'] rights under Pa.R.C.P. 4003.1, 23 USC § 7525, IRSRRA'98, The Privacy Act of 1974, Pa.R.A.P. 313, and 42 Pa.C.S.A. § 5928 violated due to [the trial judge's] err[or] when he granted [Dr. Schmidt's] Motion to Compel Steve Goldflam produce [LeBoon's] tax returns for the years 2007-2013?

3. Were [the LeBoons'] rights under 42 Pa.C.S.A. § 5923, 42 Pa.C.S.A. § 5924, Pa.R.C.P. 4003.1, Pa.R.C.P. 4011, and Pa.R.A.P. 313 violated due to [the trial judge's] err[or] when he granted [Dr. Schmidt's] Motion Overrule [the LeBoons'] Objections to Interrogatories?

4. Were [the LeBoons'] rights under 42 Pa.C.S.A § 5923, 42 Pa.C.S.A. § 5924, Pa.R.C.P. 4003.1, Pa.R.C.P. 4011, 42 Pa.C.S.A. § 5928 and Pa.R.A.P. 313 violated due to [the trial judge's] err[or] when he granted [Dr. Schmidt's] Motion to Overrule [the LeBoons] Objections to Requests for Production of Documents?

5. Were [the LeBoons'] rights under 42 Pa.C.S.A. § 5923, 42 Pa.C.S.A. § 5924, Pa.R.C.P. 4003.1, Pa.R.C.P. 4011, 42 Pa.C.S.A. § 5928 and Pa.R.A.P. 313 violated due to [the trial judge's] err[or] when he granted [Dr. Schmidt's] Motion to Compel the deposition of [LeBoon]?

6. Were [the LeBoons'] rights under 42 Pa.C.S.A. § 5923, 42 Pa.C.S.A. § 5924, Pa.R.C.P. 4003.1, Pa.R.C.P. 4011, 42 Pa.C.S.A. § 5928 and Pa.R.A.P. 313 violated due to [the trial judge's] err[or] when he granted [Dr. Schmidt's] Motion to Compel the deposition of Cassandra LeBoon?

7. Were [the LeBoons'] rights under rules of Discovery violated due to [the trial judge's] err when he denied access to [Dr. Schmidt's] financial tax returns, even after he stated in the Amended Complaint that [Dr.] Schmidt "has been forced to expend time at the expense of his medical practice"?

LeBoon's Brief at 6-7 (citations modified).

We first must determine whether we have jurisdiction. LeBoon asserts that the order is a collateral order pursuant to Pa.R.A.P. 313 and, therefore,

we have jurisdiction. However, LeBoon provides no argument in support of his assertion.

Addressing this issue, we have stated:

"[I]n general, discovery orders are not final, and are therefore unappealable." **Jones v. Faust**, 852 A.2d 1201, 1203 (Pa. Super. 2004). However, "discovery orders involving privileged material are nevertheless appealable as collateral to the principal action" pursuant to Pa.R.A.P. 313 ("Collateral Orders"). **Id.** Rule 313(a) states that "[a]n appeal may be taken as of right from a collateral order of [a] . . . lower court." Pa.R.A.P. 313(a).

A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(b). "A discovery order is collateral only when it is separate and distinct from the underlying cause of action." **Feldman v. Ide**, 915 A.2d 1208, 1211 (Pa. Super. 2007).

As this Court explained recently:

Prior to the decision of the Pennsylvania Supreme Court in **Ben v. Schwartz**, 729 A.2d 547 (Pa. 1999), Pennsylvania courts did not often entertain interlocutory appeals from discovery orders, unless the discovery order was not related in any way to the merits of the action itself. In **Schwartz**, the Pennsylvania Supreme Court revised this rule and held that an appeal from a discovery order raising a question of the application of a privilege is separable from the underlying issue, so long as the issue of privilege may be addressed by an appellate court without analysis of the underlying issue. **Schwartz**, 729 A.2d at 551–52.

**Castellani v. Scranton Times, L.P.,** 916 A.2d 648, 652 (Pa. Super. 2007).

**T.M. v. Elwyn, Inc.**, 950 A.2d 1050, 1056-57 (Pa. Super. 2008) (some citations modified; others omitted).

As stated above, normally, we first would determine whether the order appealed is a collateral order. However, LeBoon has asserted his arguments about privilege in the merits portion of his brief and intertwined the jurisdictional and merits issues. Therefore, we examine each issue in turn to determine whether the order is collateral or interlocutory and then discuss the merits if we have the jurisdiction to do so.

In his first issue, LeBoon asserts that the trial court erred in permitting Dr. Male to be deposed regarding LeBoon's treatment. LeBoon argues that the psychologist-patient privilege pursuant to 42 Pa.C.S.A. § 5944 prevents disclosure of any information regarding treatment. He also asserts that he has not waived any Health Insurance Portability and Accountability Act of 1996 ("HIPAA") protection. LeBoon's Brief at 14-15.

We have previously found similar claims to be reviewable as collateral orders. *See Gormley v. Edgar*, 995 A.2d 1197, 1201 (Pa. Super. 2010). Therefore, we proceed to the merits.

Our standard of review is well-settled. "Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. However, to the extent that we are faced with questions of law, our scope of review is plenary." *Id.* at 1202.

In reviewing a claim of privilege in mental health records pursuant to the Mental Health Procedures Act, our Supreme Court stated that "[i]t must be emphasized that evidentiary privileges have been viewed by this Court to be in derogation of the search for truth, and are generally disfavored for this

reason. . . ." ***Octave ex rel. Octave v. Walker***, 103 A.3d 1255, 1262 (Pa. 2014). In that case, the Court held that "a patient waives his confidentiality protections under the MHPA where, judged by an objective standard, he knew or reasonably should have known his mental health would be placed directly at issue by filing the lawsuit." ***Id.*** In ***Gormley***, we affirmed the trial court's decision to order disclosure of mental health records, despite the plaintiff's claim of psychologist-patient privilege, when the plaintiff put her mental health at issue in the case by claiming anxiety as a result of an accident. ***Gormley***, 995 A.2d at 1206; ***see also Rost v. State Bd. of Psychology***, 659 A.2d 626, 629 (Pa. Cmwlth. 1995) ("Waiver of the privilege may occur where the client places the confidential information at issue in the case. It may also be waived where there is no longer an expectation of privacy regarding the information because the client has made it known to third persons.") (citations omitted). Here, in the underlying case, by claiming infliction of emotional distress, LeBoon firmly put his mental health at issue. Therefore, he waived any claim to privilege.

Insofar as LeBoon has asserted a privilege pursuant to HIPAA, he cites "45 CFR 1644.512(e)." Although that section does not exist, we presume that LeBoon intended to cite 45 C.F.R. § 164.512(e). The section provides that "a covered entity may disclose protected health information in the course of any judicial . . . proceeding" "in response to an order of a court . . . . provided that the covered entity disclosed only the protected health information expressly authorized by such order." 45 C.F.R.

§ 164.512(e)(1)(1). Here, the trial court issued such an order directing Dr. Male to testify regarding his treatment of LeBoon. Dr. Male can do so without violating HIPAA. LeBoon has raised no other HIPAA privilege and has, therefore, waived any other that he might have raised. The trial court did not abuse its discretion in ordering this discovery.

LeBoon next contends the trial court erred in ordering his bookkeeper to provide copies of his tax returns. LeBoon cites a variety of statutes to assert a privilege for those returns. LeBoon's Brief at 16-18.

However, none of the "privileges" LeBoon asserts is even remotely relevant. He cites the attorney-client privilege, but no attorney is involved in this case. He cites two general rules of discovery, Pa.R.C.P. 4003.1 and 4011, neither of which involves a privilege. He cites the collateral order rule, Pa.R.A.P. 313, without any explanation as to how that would assert a privilege. He asserts a federal privilege between a taxpayer and a federally authorized tax practitioner, 26 U.S.C. § 7525, although Mr. Goldflam has not been alleged to be a federally authorized tax practitioner.[3] LeBoon purports to find a privilege in other federal laws without citation to any statute or decisional authority. Nothing LeBoon cites provides a privilege that would protect his tax returns. As no actual assertion of privilege has been made,

---

[3] Under federal law, a certified public accountant may practice before the Internal Revenue Service. *See* 5 U.S.C.A. § 500. The record reveals that Mr. Goldflam is not an accountant, let alone a certified public accountant.

there is no right that is too important to be denied review. Therefore, the order to compel the production of the tax returns is not a collateral order, and we do not have jurisdiction to reach its merits.

In the next four issues, LeBoon asserts that the trial court erred by failing to recognize that a spousal privilege precludes answers to interrogatories, production of documents, and the taking of LeBoon's and Cassandra LeBoon's depositions. We first address jurisdiction.

As with other claims of privilege, the privilege would be lost if review were postponed until after a final judgment. The spousal privilege has long been recognized in our law and serves an important public policy of preserving marital harmony. *See Commonwealth v. Mattison*, 82 A.3d 386, 394 (Pa. 2013) ("The spousal confidential communications privilege has its roots in common law and 'is based upon considerations of public policy, as in the case of husband and wife to preserve the peace, harmony and confidence' in their relations."). In this case, the privilege also is separable from the underlying issue of wrongful use of judicial process.[4] Thus, Rule 313 is satisfied.

---

[4] *But see Fid. Nat. Title Ins. Co. of New York v. United Settlement Servs., Inc.*, 924 A.2d 1270, 1272 (Pa. Super. 2007) (holding that spousal privilege was not separable in case alleging that husband and wife engaged in fraud, because the spousal privilege does not extend to communications that perpetrate a fraud, and the court would have to determine whether fraud was committed to determine whether the privilege applied).

The two privileges cited by LeBoon are as follows:

Except as otherwise provided in this subchapter, in a civil matter neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

42 Pa.C.S.A § 5923.

In a civil matter neither husband nor wife shall be competent or permitted to testify against each other.

42 Pa.C.S.A. § 5924(a).

A communication does not qualify as a confidential communication when it has been divulged to a third party. ***Commonwealth v. G.Y.***, 63 A.3d 259, 267 (Pa. Super. 2013).[5] "The determination of what constitutes a confidential communication depends upon whether the defendant has a reasonable expectation that the communication will remain confidential." ***Mattison***, 82 A.3d at 394. Additionally, our Supreme Court has held that, while communication can be non-verbal, observations of conduct without "the attribution of a message" would not be a communication between spouses. ***Id.*** at 395.

We also have recognized that the testimonial privilege requires that the spouse must be called upon to testify against the other for it to apply.

---

[5] There are few cases addressing sections 5923 and 5924. Therefore, we look to the cases that construed the substantially similar equivalents in criminal proceedings, 42 Pa.C.S.A. §§ 5913 and 5914.

No such privilege exists when the testimony is not adverse to the other spouse. **Com. ex rel. Platt v. Platt**, 404 A.2d 410, 413 (Pa. Super. 1979).

With this background in mind, we address each of LeBoon's contentions in turn. Regarding interrogatories, LeBoon asserts that Cassandra LeBoon has no independent knowledge about the case and that the only answers that she could supply would be known to her through confidential communications with LeBoon. LeBoon's Brief at 19-21. LeBoon makes the same argument with respect to the production of documents. **Id.** at 22-24.

In his written answers, LeBoon only claimed spousal privilege in response to one of more than twenty disputed interrogatories. Similarly, he did not raise that privilege as a response to any additional interrogatories at argument. LeBoon also did not assert a spousal privilege to any of the disputed document requests, and we can find no such assertion in the hearing transcript. Therefore, because the privilege was not raised as an issue before the trial court, the issue is waived on appeal. **See Majorsky v. Douglas**, 58 A.3d 1250, 1267 (Pa. Super. 2012); Pa.R.A.P. 302(a).

For the interrogatory in which the issue was preserved, the privilege is inapplicable. That interrogatory asked whether an attorney provided assistance to the LeBoons in the underlying suit. Because this would involve a third party, no spousal privilege would apply.

LeBoon next contends that the trial court erred in granting Dr. Schmidt's motions to compel LeBoon's and Cassandra LeBoon's depositions.

LeBoon argues that the deposition would require him to divulge confidential communications with Cassandra LeBoon. LeBoon contends that the trial court ordered him and Cassandra LeBoon to answer all questions "regardless of [the] privilege asserted." LeBoon's Brief at 26, 30. LeBoon also argues that Cassandra LeBoon cannot be forced to testify against her husband, so anything elicited in her deposition would be inadmissible in court. LeBoon's Brief at 25-32.

LeBoon and Cassandra LeBoon cannot assert a blanket spousal privilege that entirely prevents Dr. Schmidt from questioning them. The privilege only applies to confidential communications between spouses. It is not reasonable to suggest that every question that Dr. Schmidt would ask would elicit a confidential communication. Additionally, the trial court did not preclude the LeBoons from asserting a spousal privilege during the deposition. The trial court stated:

> You will appear for deposition. Mrs. LeBoon will appear for deposition. If there is an objection to a specific question regarding a communication between spouses or against another spouse, you can make that objection, you can provide the answer, and then the trial judge will determine whether or not it will proceed further.

Notes of Testimony, 11/20/2014, at 68-69. It is clear that the court specifically permitted the LeBoons to object to specific questions, subject to the trial court's ruling upon those objections, but not to avoid a deposition entirely based upon a blanket assertion of spousal privilege. Thus, no relief is due at this time.

As to LeBoon's final objection, our rules state that "[i]t is not ground[s] for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Pa.R.C.P. 4003.1(b). Therefore, it does not matter if Cassandra LeBoon's deposition testimony would not be admissible at trial, provided that it reasonably could lead to admissible evidence. Because Cassandra LeBoon was a party to the underlying lawsuit and was involved in events leading to the current litigation, it is reasonable to anticipate that her testimony, even if not admissible, would lead to the discovery of admissible evidence. Again, a blanket claim of privilege cannot shield Cassandra LeBoon from being deposed, although she certainly may assert a privilege in response to individual questions as the trial court acknowledged. Because the trial court correctly disposed of the assertions of spousal privilege that were raised before it, there was not abuse of discretion.

Finally, LeBoon asserts that the trial court erred in failing to compel Dr. Schmidt to turn over Dr. Schmidt's tax returns. However, LeBoon does not argue that any privilege applies to this issue. *See* LeBoon's Brief at 33-34. Because there is no privilege at issue, this is not a collateral issue and we do not have jurisdiction to review its merits.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/9/2015</u>