729 A.2d 547

Ewa Marta BEN and Arthur T. Ben, Appellee,

v.

Burton SCHWARTZ, D.D.S. and Dr. Vincent DePancis, t/a Suburban Dental Care, Commonwealth of Pennsylvania, Department of State, Bureau of Professional and Occupational Affairs.

Appeal of Burton Schwartz, D.D.S.

Ewa Marta Ben and Arthur T. Ben, Appellee,

v.

Burton Schwartz, D.D.S. and Dr. Vincent DePancis, t/a Suburban Dental Care, Commonwealth of Pennsylvania, Department of State, Bureau of Professional and Occupational Affairs.

Appeal of Pennsylvania, Department of State, Bureau of Professional and Occupational Affairs.

Supreme Court of Pennsylvania.

Argued April 27, 1998.

Decided April 21, 1999.

---

476

Michelle T. Wirtner, Jeffrey D. Hutton, Philadelphia, for Burton Schwartz, D.D.S.

Paul A. Tufano, General Counsel, for Com. of Pa.

James A. Holzman, Bernadette Paul, Robert J. DeSousa, Gerard M. Mackarevich, Harrisburg, for St. Bureau of Professional and Occupational Affairs.

Richard L. Gerson, Philadelphia, for Ewa M. and Arthur T. Ben.

Anita Fulwiler O'Meara, for Dr. Vincent DePanicis, et al.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION

ZAPPALA, Justice.

The issue presented in these appeals is whether the order of the Montgomery County Common Pleas Court, compelling the Bureau of Professional and Occupational Affairs to produce its investigative file pertaining to complaints filed against a dentist, is appealable under the exception to the final order rule for collateral orders. We find that the order was appealable as a collateral order and remand for further proceedings.

On October 11, 1994, Ewa Marta Ben and Arthur T. Ben filed a writ of summons against Burton Schwartz, D.D.S. and Dr. Vincent DePancis, t/a Suburban Dental Care. The complaint, which was filed on April 5, 1995, asserted a malpractice claim arising out of dental treatment provided to Ewa Ben

from July 1991 until September 1993. On November 29, 1995, a notice of deposition and subpoena were issued to the Bureau compelling production of the Bureau's investigative file pertaining to Dr. Schwartz at a deposition scheduled for December 20, 1995.

The Bureau is an administrative agency whose powers and duties include the investigation, prosecution and discipline of professional licensees, including dentists. 71 P.S. § 279.3. The State Board of Dentistry is a professional licensing board within the Bureau responsible for the investigation and discipline of Pennsylvania's dentists pursuant to The Dental Law, 63 P.S. § 121 et seq. In response to the issuance of the subpoena, the Bureau filed a Motion to Quash Subpoena and for Protective Order. The Bureau asserted that the information subpoenaed was privileged and not subject to discovery. The privileges asserted included governmental/executive privilege and privilege under the Right–to–Know Law, 65 P.S. § 66.1 et seq. The Bureau also asserted that the subpoenaed information included medical records of persons who were not involved in the lawsuit and purported to assert the doctor-patient privilege on behalf of those unidentified persons. Finally, the Bureau claimed that compliance with the subpoena would result in unreasonable annoyance, oppression, burden and expense because investigations relating to the large volume of complaints received annually consume its limited resources.

On February 13, 1996, the common pleas court entered an order dismissing the motion to quash the subpoena and directing that the Bureau produce the investigative file relating to Dr. Schwartz. The Bureau filed a notice of appeal to the Commonwealth Court on March 14, 1996. The common pleas court directed the Bureau to file a concise statement of matters complained of pursuant to Pa. R.A.P.1925(b). Subsequent to the Bureau's filing of its statement, the court issued an opinion in support of its order. The court concluded that the appeal should be quashed as interlocutory because its order dismissing the motion was not a final, appealable order under the Rules of Appellate Procedure. Although the court

found that the merits of the Bureau's claim did not have to be addressed because the appeal was premature, the court addressed the merits to aid the Commonwealth Court should it find the order was appealable. The court determined that there was no privilege which insulated the information subpoenaed from discovery.

After the notice of appeal was filed, the Bens settled their claims against Dr. Schwartz and executed a joint tortfeasors release. The malpractice action against Dr. DePancis continued.

On March 14, 1997, the Commonwealth Court quashed the Bureau's appeal from the common pleas court's order as interlocutory. The court concluded that the order was not appealable under the exception to the final order rule for collateral orders because the order was not separable from and collateral to the main cause of action. Relying on its decision in *Doe v. Department of Public Welfare*, 105 Pa. Cmwlth. 482, 524 A.2d 1063 (1987), the court reasoned that discovery orders are to be considered collateral only when they do not relate in any way to the merits of the action.

Because the complaint alleged that both dentists were negligent in treating Ewa Ben, the court found that information regarding the performance of one would undoubtedly shed light upon the performance of the other. The common pleas court's order was considered not separable from and collateral to the Bens' malpractice claim because the subpoenaed information had the potential to determine one of the ultimate issues in the case. The Commonwealth Court found it unnecessary to address the Bureau's claims of privilege based on its determination that the order was not appealable.

The Bureau and Dr. Schwartz challenge the Commonwealth Court's determination, asserting that the order compelling production of its investigative file on Dr. Schwartz constitutes a collateral order under applicable law. They contend that the merits of the issue of whether the Bureau's investigative file is protected from compliance with the subpoena are independent

and conceptually different from the remaining claim of malpractice by Dr. DePanicis.

■ An appeal may be taken only from a final order unless otherwise permitted by statute or rule. A final order is ordinarily one which ends the litigation or disposes of the entire case; however, "[a]n appeal may be taken as of right from a collateral order of an administrative agency or lower court." Pa. R.A.P. 313(a). A collateral order is defined under Pa. R.A.P. 313(b) as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." [1]

In *Geniviva v. Frisk*, 555 Pa. 589, 725 A.2d 1209 (1999), we observed that "[a]lthough the 'collateral order doctrine' has often been applied in determining whether the appeal was proper in particular cases, our courts have not provided significant analysis of the elements defining a collateral order—separability, importance, and irreparable loss if review is postponed—so as to allow for predictable application to different circumstances."

The Commonwealth Court determined in this case that the Bureau had failed to establish the separability prong of the collateral order test, citing its decision in *Doe v. Commonwealth of Pennsylvania, Department of Public Welfare*, 105 Pa.Cmwlth. 482, 524 A.2d 1063 (1987). In *Doe*, the appellee had filed a civil action against Mayview State Hospital after an escapee from Mayview abducted and raped her. During discovery, the appellee requested production of a memorandum outlining the psychological status and chronology leading to the inmate's escape and a document analyzing the inmate's admission, background and escape. Mayview refused to produce the documents, claiming that the state hospital was privileged under the Mental Health Procedures Act and the

1. The note to Pa. R.A.P. 313 states that it is "a codification of existing case law with respect to collateral orders," citing *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978), which quoted *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

Peer Review Protection Act. The common pleas court concluded that the documents were not privileged and ordered production of the documents for an in camera inspection to determine their relevancy.

The Commonwealth Court quashed Mayview's appeal from the discovery order, reasoning that

Here, the documents relate to the actions undertaken by the staff and physicians at Mayview State Hospital, which actions [appellee] asserts, by their negligence, were the proximate cause of her injury. The information sought has the potential to determine the ultimate issues of liability or to dissuade the trier of fact from finding liability at all. When courts have applied the Cohen doctrine to discovery orders, they have held them to be "separable and collateral" only when they did not relate in any way to the merits of the action itself.

105 Pa.Cmwlth. at 487, 524 A.2d at 1065.

The Bureau asserts that the issue of privilege is separate and distinct from the underlying cause of action, even if release of the information could shed light on the malpractice allegations. The Bureau relies upon the decision of the United States Court of Appeals for the Third Circuit in *In Re: Ford Motor Company*, 110 F.3d 954 (1997) as support for its argument. In that product liability action, Ford Motor Company invoked the attorney-client privilege and the work product doctrine in challenging the discovery of documents related to the development, marketing and safety of the Bronco II, a four-wheel drive utility vehicle. The district court denied Ford's request for protection of the documents requested. The appeals court determined that it had appellate jurisdiction under the collateral order doctrine, reversed the district court's order in part and remanded with directions that discovery be denied as to particular documents.

In addressing the separability issue under the collateral order doctrine, the court considered, and rejected, the plaintiff's argument that a determination of the issue of privilege and work product would implicate the merits of the underlying

dispute. The court distinguished the substantive issue raised by the plaintiff's allegations that the vehicle was defectively designed because of a propensity to roll over from the issue of attorney-client privilege.

> As we understand the merits of the underlying case, Kelly seeks to show what Ford knew about the alleged rollover propensity of the Bronco II, when it knew about this alleged propensity, and what it did about the alleged propensity. The contents of the documents will certainly shed some light on these questions. However, our resolution of the privilege and work product issues has nothing to do with them. We are not concerned at this juncture about what Ford knew, when it gained this knowledge, or what it did about it. Our inquiry largely involves questions of context—e.g., who prepared the relevant documents, when were they prepared, and what was their purpose. It involves content only insofar as we must ensure that the documents were prepared in certain contexts—e.g., do the documents contain legal advice or do they disclose legal strategies? We are not required, nor will we undertake, to resolve disputed questions of Ford's knowledge of and Ford's actions with respect to the alleged rollover propensity.

110 F.3d at 958.

We find the *Ford Motor* concept of separability to be more practical in application than the standard articulated by the Commonwealth Court in *Doe*. As in *Ford Motor*, the issues of privilege raised by the Bureau can be addressed without analysis of the alleged negligence of the dentists in treating Ewa Ben. We find, therefore, that the Bureau has demonstrated that the issue of privilege is separate from the merits of the dispute for purposes of the collateral order doctrine.

We must address then whether the remaining prongs of importance and irreparable loss if review is postponed have been established by the Bureau as well. In analyzing the importance prong, we weigh the interests implicated in the case against the costs of piecemeal litigation. *Geniviva*, 725 A.2d at 1213.

> For purposes of defining an order as a collateral order under Rule 313, it is not sufficient that the issue be important to the particular parties. Rather it must involve rights deeply rooted in public policy going beyond the particular litigation at hand.

*Id.* at 1213–14. "[T]he overarching principle governing 'importance' is that, for the purposes of the *Cohen* test, an issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule." *Ford Motor Company,* 110 F.3d at 959 (footnote deleted).

■ Appellants assert that appellate review of the executive and statutory privileges asserted is necessary to protect the public interest in enforcement of the state's professional licensure laws. It is contended that release of information would hinder the investigative powers of the administrative agency because witnesses may not feel free to provide information which may later be ruled discoverable by a trial court in a related action. Appellants further argue that the Bureau has a responsibility to protect the identity of complainants and witnesses who cooperate in Commonwealth investigations.

We find that resolution of the issue of whether the investigative files of the Bureau are subject to any executive or statutory privilege implicates rights rooted in public policy, and impacts on individuals other than those involved in this particular litigation. Furthermore, we find that in weighing the competing consideration of the costs of piecemeal review against the costs of delay, the public interests expressed in the form of executive privilege and statutory privileges tip the balance in favor of immediate appellate review. The importance criterion has been met in this case.

■ The remaining prong of the collateral order doctrine requires us to consider whether the order permitting discovery of the Bureau's investigative files is such that if review is postponed until final judgment in the case, the claim will be irreparably lost. The Bureau argues that because the subpoe-

naed documents would be in the possession of the Bens and the other participants remaining in the malpractice action if the Bureau is required to produce the investigative file, subsequent appellate review would be moot. In essence, the disclosure of documents cannot be undone. We agree. "[T]here is no effective means of reviewing after a final judgment an order requiring the production of putatively protected material." *Ford Motor Company,* 110 F.3d at 964.

We find that the Commonwealth Court erred in quashing the Bureau's appeal from the common pleas court's order dismissing its motion to quash the subpoena. Given its disposition of the issue of appealability of the common pleas court's order, the Commonwealth Court found it unnecessary to address the substantive question of whether the subpoenaed materials were protected by executive privilege or other asserted statutory privileges. For the sake of judicial economy, we will address the issue of privilege left unresolved by the Commonwealth Court, which has been briefed by the·parties at great length.[2]

The Bureau argues that its investigative files are privileged against compelled disclosure to private civil litigants. The assertion of privilege is grounded upon three claims: (1) that the files are protected by an executive privilege that protects government, investigative, deliberative and witness information from being released in civil proceedings; (2) that the file is privileged under the Right–to–Know Law; and (3) that patients other than Ben have a privacy interest in their dental records.

We find that there is no merit to the Bureau's claim of privilege for any of the reasons asserted. The Bureau acknowledges that the General Assembly has not seen fit to enact a specific confidentiality provision or protection for the Bureau's investigative files. Furthermore, the Bureau concedes that no judicial precedent exists to support its claim of confidentiality. Nevertheless, the Bureau requests this Court

**2.** The common pleas court specifically addressed the issue of privilege assuming for the sake of argument that the Commonwealth Court would review the Bureau's appeal on the merits.

recognize a privilege that would prevent disclosure of investigative files because its interest in ensuring the confidentiality of documents outweighs the Bens' need to obtain discovery of any relevant materials in the Bureau's possession. The Bureau's concern that its investigations may be affected by the potential for disclosure of its files in the course of discovery proceedings does not lead inevitably, however, to the conclusion that the files are in fact privileged.

■ The Bureau claims that its files are protected by an executive privilege that protects government, investigative, deliberative and witness information from being released in civil proceedings. The nature of the privilege claimed by the Bureau is described in the Superior Court's decision in *Commonwealth v. Kauffman*, 413 Pa.Super. 527, 534, 605 A.2d 1243, 1246–1247 (1992), which is relied upon by the Bureau.

> The federal courts, on occasion, have identified a common law "executive" or "governmental" privilege which they have relied upon to protect information from being discovered during ongoing government investigations. Thus, in *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa.1973), the federal court for the eastern district of Pennsylvania defined the "executive privilege" as "the government's privilege to prevent disclosure of certain information whose disclosure would be contrary to the public interest." This privilege, however, is not absolute but qualified; and when asserted, requires the court to balance the government's interest in ensuring the secrecy of the documents whose discovery is sought against the need of the private litigant to obtain discovery of relevant materials in possession of the government.

The Bureau does not cite any authority establishing that an executive privilege has been recognized in this Commonwealth for information obtained in the course of an investigation of private complaints made against a professional licensee; nor do we find the Bureau's argument for recognition of a common law privilege compelling in this case.

■ We find the Bureau's arguments that the information is privileged under the Right–to–Know Law, and because patients other than the party requesting discovery have a privacy interest in their dental records, also lack merit. Even assuming, arguendo, that the investigative files fall within the scope of the Right–to–Know Law,[3] the statute is not applicable to discovery proceedings under the Pennsylvania Rules of Civil Procedure.

> The fact that the legislature excluded certain documents from public inspection does not mean that the legislature intended to bar the use of such information in judicial proceedings. The purpose of the Right to Know Law was to make certain information available to members of the public. Whether information should be made available for use in court proceedings involves entirely different consider-ations.... We ... hold that the Right to Know Law does not bar a party in a civil action from discovering relevant information from the files of a government agency. To hold otherwise, would insulate from discovery all information possessed by governmental agencies, no matter how rele-vant the information might be, unless the same information were also available upon request to any and all citizens of the Commonwealth. Such a result clearly was not contem-plated by the legislature when it enacted the Right to Know Law. Indeed, such a result would not only emasculate the discovery provisions of the rules of civil procedure, but would also represent an unsound departure from estab-lished law.

*Kauffman,* 413 Pa.Super. at 532–533, 605 A.2d at 1246.

■ The common pleas court rejected the Bureau's final assertion that the investigative files should not be discoverable because patients besides Ben have a privacy interest in their dental records. The court observed that the Bens' review of the dental records will be limited as the subpoenaed informa-

---

**3.** The parties have not addressed the applicability of the Right–to–Know Law to the information requested from the Bureau in their briefs. We will not address the issue in light of our determination that the statute would not prohibit disclosure of the Bureau's investigative files in discovery proceedings.

tion was limited to the type of treatment which was afforded to various patients of Dr. Schwartz, and that the Bens were not seeking confidential patient communications, the names of patients or other highly sensitive material. In the context of this litigation, the court concluded that the privacy interests of third parties were not offended by requiring the production of the subpoenaed documents. Furthermore, the court concluded that, if necessary, a means of ensuring confidentiality and protecting the dental patients' anonymity could be implemented through in camera inspection or otherwise.

The Bureau presents no compelling argument why a broad prohibition against discovery of materials is required to protect the privacy interest, if any, of dental patients where other less restrictive means are available. The Bureau merely asserts that the records and information relating to other dental patients are not related to the Bens' cause of action. This argument questions only the relevancy of the requested information, and does not address the issues of whether a privacy interest in the nondisclosure of dental records should be recognized, and, if so, whether such privacy interest would be violated by disclosure of the information subpoenaed in this case. We are unpersuaded by the Bureau's argument for an absolute prohibition against discovery of the investigative files on the basis of a right to privacy. Furthermore, it would be unwise to address the right to privacy claim in the absence of a fully developed record in this case, and in view of the settlement of the Bens' claim against Dr. Schwartz after the common pleas court had issued its ruling on the Bureau's motion to quash the subpoena.

Accordingly, we vacate the Commonwealth Court's order quashing the Bureau's appeal and remand this matter to the Montgomery County Court of Common Pleas for further proceedings consistent with this opinion.