977 A.2d 1121 (2009)
Robert RAE and Commonwealth Funeral Consultants, Inc.
v.
PENNSYLVANIA FUNERAL DIRECTORS ASSOCIATION, John W. Eirkson and James O. Pinkerton
v.
Monty J. Batson, Esq., Shawn E. Smith, Esq., and Larry Hall
Appeal of Robert Rae and Commonwealth Funeral Consultants, Inc.
No. 43 MAP 2008
Supreme Court of Pennsylvania.
Argued December 4, 2008.
Decided August 17, 2009.
*1122 Barbara A. Zemlock, James John Kutz, Post & Schell, P.C., Harrisburg, for Robert Rae and Commonwealth Funeral Consultants, Inc.
*1123 Sarah C. Yerger, PA Office of Attorney General, for James O. Pinkerton.
Daniel L. Grill, Stephanie Lynn Hersperger, Anthony Lucido, Thomas, Thomas & Hafer, L.L.P., Harrisburg, Gordon W. Gerber, Dechert LLP, Philadelphia, for John W. Eirkson and PA Funeral Directors Association.
Henry E. Hockeimer, Jr., Brooke Judith McDermott, William Brooke Igoe, Ballard Spahr Andrews & Ingersoll, L.L.P., Philadelphia, for Monty Batson, Shawn Smith and Larry Hall.
Before: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

OPINION
Justice TODD.
In this appeal, we are asked to determine whether the collateral order test laid out in Ben v. Schwartz, 556 Pa. 475, 729 A.2d 547 (1998), and Pa.R.A.P. 313 must be met for each individual issue an appellate court reviews on collateral appeal. The question in essence is whether this Court should adopt an "issue-by-issue application" of Rule 313, or whether, once the collateral order test is satisfied with respect to one issue, an appellate court has jurisdiction to consider every issue within the ambit of the appealed orderthat is, whether to adopt a "whole order approach" to Rule 313. For the reasons which follow, we adopt an issue-by-issue application of Rule 313. Accordingly, we vacate the determination of the Commonwealth Court quashing the depositions of Appellees Monty J. Batson, Esquire, Shawn E. Smith, Esquire, and Larry Hall (collectively "Deponents"), and remand for further proceedings consistent with this opinion.
The background of this case is as follows: Appellants Robert Rae and Commonwealth Funeral Consultants, Inc. operated a business selling insurance for funeral expenses to consumers, which was investigated by the Pennsylvania Bureau of Professional and Occupational Affairs ("the Bureau"). The investigation commenced after a complaint filed by the Pennsylvania Funeral Directors Association ("the Association") in 2000. Initially, the Bureau assigned Appellee Monty J. Batson to the investigation. After five years of unexplained inactivity, the file was closed and then reopened.[1] At that time, Deponents Smith and Hall were assigned to the investigation.
In the interim, Appellants commenced the present civil suit against the Association for defamation, tortious interference with contractual relationships, and tortious interference with potential contractual relationships, alleging the Association told consumers Appellants were engaged in illegal activity and that they consequently lost business. Appellants filed subpoenas duces tecum upon Smith and Hall, seeking to depose them and directing that they produce the file of the Bureau's investigation into Appellants at the time of their deposition. The Bureau initially sought to quash the subpoenas. However, after briefing, argument, and the trial court's in camera review of the file, the Bureau voluntarily produced the file. Deponents then moved to quash the subpoenas as related to their depositions only, and the Bureau moved to treat the file as confidential. *1124 After a subsequent status conference, the trial court denied Deponents' motion to quash and scheduled the depositions, though specifying that proceedings would be conducted in camera and barring any party from disclosing any information which might arise during the discovery process to any non-party without the express permission of the court. Trial Ct. Order, 8/24/06. Deponents appealed to the Commonwealth Court, asserting, inter alia, that their testimony was (1) precluded by the deliberative process privilege, and (2) irrelevant to Appellants' cause of action. Appellants moved to quash the appeal as interlocutory, challenging whether the order in question was an appealable collateral order.
A unanimous panel of the Commonwealth Court denied the motion to quash the appeal and affirmed in part and reversed in part in a published opinion. Rae v. Pennsylvania Funeral Directors Ass'n, 925 A.2d 197 (Pa.Cmwlth.2007). The court restated the well-established test for collateral review laid out in Ben, supra, and Pa.R.A.P. 313: collateral review is appropriate, despite the general directive that appellate courts conduct review only of final orders, if an order is (1) separable from and collateral to the main cause of action, (2) implicates rights which are too important to be denied review, and (3) the appellant's claim as to that order will be lost if postponed until final judgment. The court reasoned the order in question was a collateral order, since it was collateral to the defamation suit, involved the important issue of the deliberative process privilege, and would be mooted if review was postponed until final judgment because the privileged depositions would already have been conducted. On that basis, the court denied Appellants' motion to quash.
On the merits, the court concluded the Deponents' assertion of privilege was meritless. Nevertheless, rather than ending its review with that assessment, it went on to address the relevance of Deponents' testimony. In that regard, the court concluded Appellants had not demonstrated the relevance of Deponents' testimony and, accordingly, concluded deposing Deponents was inappropriate under Pa.R.Civ.P. 4003.1(a).[2]
Appellants then sought allowance of appeal with this Court, which we granted on the following issue:
Must an appellate court separately apply the collateral order test laid out in Pa. R.A.P. 313 and this Court's decision in Ben v. Schwartz, 556 Pa. 475, 729 A.2d 547 (Pa.1999), to every legal question it addresses on collateral appeal, or is it sufficient that the legal question giving rise to the order itself satisfies the collateral order test?
Rae v. Pennsylvania Funeral Directors Ass'n, 597 Pa. 220, 951 A.2d 256 (2008) (order).[3]
As a general rule, an appellate court's jurisdiction extends only to review *1125 of final orders. See Pa.R.A.P. 341 ("[A]n appeal may be taken as of right from any final order.") Final orders are those which either (1) dispose of all claims and all parties, (2) are explicitly defined as final orders by statute, or (3) are certified as final orders by the trial court or other reviewing body. See Pa.R.A.P. 341. The final order rule
serves to maintain the appropriate relationship between the district and appellate courts ... by ensuring that [trial judges'] every determination is not subject to the immediate review of an appellate tribunal.... The consolidation of all contested rulings into a single appeal provides the circuit courts with an opportunity, furthermore, to consider a trial judge's actions in light of the entire proceedings below, thereby enhancing the likelihood of sound appellate review.
Riyaz A. Kanji, The Proper Scope of Pendent Appellate Jurisdiction in the Collateral Order Context, 100 Yale L.J. 511, 512-13 (1990), (discussing the Collateral Order Rule in the federal court context).
Rule 341 reflects the traditional approach of American appellate courts. However, in Cohen v. Beneficial Ind. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the United States Supreme Court crafted the collateral order doctrine, permitting the appeal of a narrow class of orders which address claims of right "separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause [of action] itself to require that appellate consideration be deferred until the whole case is adjudicated." Id. at 546, 69 S.Ct. 1221.
This Court followed the United States Supreme Court in adopting a "practical rather than a technical construction" of what constitutes an appealable order, and so permitting immediate appellate review of certain collateral orders. See Pugar v. Greco, 483 Pa. 68, 73, 394 A.2d 542, 545 (1978) (quoting Cohen, supra). Pa.R.A.P. 313, promulgated in 1992, solidified and codified the collateral order doctrine. That rule provides, in pertinent part:
(a) General rule. An appeal may be taken as of right from a collateral order of an administrative agency or lower court.
(b) Definition. A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.
Pa.R.A.P. 313.[4] Accordingly, where an order satisfies Rule 313's three-pronged test, we may exercise appellate jurisdiction where the order is not final. If the test is not met, however, and in the absence of another exception to the final order rule, we have no jurisdiction to consider an appeal of such an order. See Commonwealth v. Kennedy, 583 Pa. 208, 215, 876 A.2d 939, 943 (2005) (a Rule 313 issue is "an issue of [an appellate court's] jurisdiction to entertain an appeal").
In response to perceived over-reliance on the collateral order doctrine by courts of appeals to establish jurisdiction over otherwise interlocutory orders, the U.S. Supreme Court began imposing "severe limitations" on the scope of collateral review.[5] In Coopers & Lybrand v. Livesay, *1126 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), for instance, the Court rejected the determination by the United States Court of Appeals for the Second Circuit that a denial of class certification justified collateral review, reasoning, inter alia, that the factual issues underlying the denial of certification were enmeshed with the merits of the underlying litigation and the decision could be effectively reviewed after final judgment. See also Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (holding the federal collateral order doctrine must be interpreted narrowly); Midland Asphalt Corp. v. U.S., 489 U.S. 794, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989) (same).
To buttress the final order rule, we, too, have concluded the collateral order doctrine is to be construed narrowly, and we require every one of its three prongs be clearly present before collateral appellate review is allowed. Melvin v. Doe, 575 Pa. 264, 272, 836 A.2d 42, 47 (2003); Geniviva v. Frisk, 555 Pa. 589, 599, 725 A.2d 1209, 1214 (1999). Parties may seek allowance of appeal from an interlocutory order by permission, and we have concluded that discretionary process would be undermined by an overly permissive interpretation of Rule 313's limited grant of collateral appeals as of right. Geniviva, 555 Pa. at 599, n. 5, 725 A.2d at 1214, n. 5.
In Ben, supra, which is now our seminal case interpreting the collateral order doctrine, we applied Rule 313 to a claim by the Bureau, similar to that presented in the instant case, that its investigative records were shielded from discovery by, inter alia, a governmental agency deliberative process privilege.[6] First, we held that where a discovery order could shed light on the substantive allegations at issue but could be resolved without analysis of the merits of the underlying issue, the severability prong of Rule 313 was satisfied. Next, we held that resolving the executive privilege at issue implicated deeply rooted rights of general implication, satisfying the second prong. Finally, we held that disclosure of documents "cannot be undone," so that if review is postponed, the claim will be irreparably lost. Ben, 556 Pa. at 485, 729 A.2d at 552. Accordingly, we concluded collateral review of the Bureau's assertion of privilege was appropriate. However, based on that collateral review, we concluded the privilege did not exist, holding:
The Bureau does not cite any authority establishing that an executive privilege has been recognized in this Commonwealth for information obtained in the course of an investigation of private complaints made against a professional licensee; nor do we find the Bureau's argument for recognition of a common law privilege compelling in this case.
Id. at 486, 729 A.2d at 553.[7]
In Ben, however, we did not speak to the question instantly before us. Thus, whether to adopt an "issue-by-issue application" of Rule 313 or a "whole order approach" to that rule is a matter of first impression. We undertake our analysis cognizant that our precedent strongly cautions against permitting the collateral order doctrine to become an exception which swallows, in whole or in any substantial part, the final order rule.[8]
*1127 Appellants offer two primary arguments in support of an issue-by-issue application of Rule 313. First, they argue the whole order approach is inconsistent with the purpose of the final order rule and the narrow exception crafted by the collateral order doctrine. The final order rule embodied in Rule 341, they assert, is intended to avert piecemeal litigation and pre-judgment appellate oversight of matters, such as the discovery process, which are vested in the sound discretion of the trial court. To permit consideration of a routine discovery matter as if on direct appeal merely because Deponents raised a meritless privilege claim, Appellants aver, would broaden the collateral order exception and create precisely the plethora of piecemeal litigation Rule 341 seeks to avoid.
Next, Appellants point us to federal collateral order jurisprudence. They note we derive our collateral order doctrine, as we have discussed above, from the United States Supreme Court's caselaw, and point out that in both the criminal and civil contexts, the high Court has clearly adopted an issue-by-issue application of its own collateral order test.
Further, they assert, to permit the broad collateral review exercised by the Commonwealth Court could lead to parties raising meritless issues which satisfy Rule 313 to get in the door of appellate review and then present a myriad of issues, none of which could have independently justified review. Moreover, in some cases, they assert, the whole order approach would lead to results dependent upon the styling of the trial court's orderthat is, whether a trial court decides multiple legal questions within the scope of one order or whether each legal question is parceled out into a separate order. In addition, on auxiliary issues, Appellants assert appellate courts would be placed in the unfortunate position of adjudicating issues based on an incomplete record, whereas post judgment, a complete record permits the consideration of issues within the context of the proceedings as a whole.
Finally, Appellants note, we have often used the singular term "issue" or "claim" in discussing our collateral review under Pa.R.A.P. 313. See Ben, supra; Geniviva, supra. Thus, they suggest, we have restricted our jurisdiction to only those claims or issues which merit collateral review under Rule 313.
By contrast, Deponents argue judicial economy should be the driving consideration and is best achieved by permitting appellate review of all issues surrounding a collateral order once that order has satisfied the Ben test on any basis. Moreover, Deponents assert, the Commonwealth Court's decision will not open the door to a flood of frivolous litigation, as under that approach, a party will be able to achieve collateral review only in the narrow circumstances contemplated by Rule 313; that procedures exist to quash frivolous appeals; and that the threat of sanction will discourage such appeals. Further, Deponents argue, federal caselaw on the subject deals with distinct circumstances, does not bind this Court and, in any event, represents an overly formalistic test which we should not apply in Pennsylvania. In their separate brief, Deponents aver that, regardless of the approach we choose, the relevance issue independently satisfies the collateral order test.
Initially, we note Rule 313 is ambiguous as to the issue before usno portion of its text explicitly requires either an issue-by-issue application of the collateral order doctrine or a whole order approach thereto. Indeed, the text could support either approach.[9], [10]
*1128 In explicating the contours of Rule 313 and its jurisprudential predecessors, we look to the United States Supreme Court's decisions for guidance. See, e.g., Pridgen v. Parker Hannifin Corp., 588 Pa. 405, 421 n. 11, 905 A.2d 422, 432 n. 11 (2006) (noting our collateral order doctrine "initially derives from the United States Supreme Court's approach"); Vaccone v. Syken, 587 Pa. 380, 899 A.2d 1103 (2006) (noting the similarities between our collateral order jurisprudence and the high Court's); Geniviva, supra (same). In both the criminal and civil contexts, the U.S. Supreme Court has adopted an issue-by-issue approach and restricted collateral appeal to those issues which independently satisfy the collateral order test, rather than permitting whole order review of an entire case once one issue crosses the collateral order threshold. See Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (criminal); Swint v. Chambers County Comm'n, 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) (civil).
In Abney, the United States Supreme Court held that pretrial orders denying motions to dismiss on double jeopardy grounds were immediately appealable. However, the Court noted, "we, of course, do not hold that other claims contained in the motion to dismiss are immediately appealable as well.... Rather, such claims are appealable if, and only if, they too fall within [the] collateral-order exception to the final-judgment rule." 431 U.S. at 663, 97 S.Ct. 2034. Explaining its decision, the Abney Court added:
Any other rule would encourage criminal defendants to seek review of, or assert, frivolous double jeopardy claims in order to bring more serious, but otherwise nonappealable questions to the attention of the courts of appeals prior to conviction and sentence.
431 U.S. at 663, 97 S.Ct. 2034.
In Swint, the Court held the Abney rationale "bears on civil cases as well." Swint, 514 U.S. at 50, 115 S.Ct. 1203. Thus, it concluded that the United States Court of Appeals for the Eleventh Circuit had collateral jurisdiction over a trial court's denial of summary judgment motions filed by individual police officer defendants. However, jurisdiction over the police officers' motion did not justify immediate appellate review of whether county commissioner defendants were liable under Alabama statutory law, and the question of the commissioners' liability did not independently satisfy Cohen. 514 U.S. at 42, 51, 115 S.Ct. 1203. After reiterating the rationale expressed in Abney, the Court added that not to adopt an issue-by-issue application of the collateral order doctrine would "encourage parties to parlay Cohen-type collateral orders into multi-issue interlocutory appeal tickets," thus *1129 undesirably broadening the scope of collateral appeal. 514 U.S. at 49-50, 115 S.Ct. 1203.[11]
Deponents offer a superficially appealing argument that judicial economy militates in favor of the whole order approach since, once one issue addressed within an order satisfies Rule 313, an appellate court must conduct a review of the record, schedule argument, and otherwise accept most of the burdens of reviewing a matter, and the issue-by-issue application of Rule 313 postpones consideration of any secondary issues implicated by the same order until final judgment, thus perhaps necessitating another appeal. By contrast, Deponents argue, the whole order approach may obviate the need for a subsequent appeal. However, we find Swint and Abney's approach to judicial economy more persuasive:[12] despite Deponents' assertions that other tools, such as sanctions, would be sufficient to curtail abuse, the whole order approach would almost certainly have the effect of increasing collateral review by encouraging creative advocates to raise claims which, while sufficient to satisfy Rule 313, are unlikely to prevail, so as to achieve immediate appellate review of secondary and otherwise unappealable claims.[13]
Moreover, we construe the collateral order doctrine narrowly. Melvin, supra. In adopting a narrow construction, we endeavor to avoid "piecemeal determinations and the consequent protraction of litigation." Sullivan v. Philadelphia, 378 Pa. 648, 649, 107 A.2d 854, 855 (1954). Such piecemeal litigation imposes a "substantial" burden on the "orderly administration of justice." Kennedy, 583 Pa. at 232, 876 A.2d at 954 (Saylor, J., concurring). Indeed, before concluding an issue satisfies the test's second prongregarding whether it implicates a right too important to be denied reviewwe consider whether the right is important compared to the "costs of piecemeal litigation" and the "efficiency interests sought to be advanced by adherence to the final judgment rule." Ben, 556 Pa. at 484, 729 A.2d at 552 (citations and internal quotation marks omitted).[14]
*1130 In addition, courts avoid piecemeal review not only out of concern for judicial economy, but out of concern for judicial accuracybecause, as a general rule, an appellate court is more likely to decide a question correctly after judgment, where it may consider the claim in the context of a complete adjudication and a fully developed record. See Favell v. United States, 22 Cl.Ct. 132, 140 (Cl.Ct.1990); Taylor v. Board of Educ., 288 F.2d 600, 605 (2d Cir.1961). While the whole order approach would not create an entire new stage of litigation, because the pre-judgment appeal itself has already been triggered by Rule 313, this approach would undermine the consolidation of issues into a single post-verdict appeal. As a result of that consolidation, our appellate courts have the benefit of a comprehensive record  encompassing discovery and pre-trial issues, trial issues, and post-trial issues which allows us the proper perspective on each particular claim, including, where relevant, the possibility of harmless error. Thus, by promoting consolidation in post-judgment appeal, and so promoting judicial accuracy, the federal approach better minimizes the "costs of piecemeal litigation." Ben, 556 Pa. at 484, 729 A.2d at 552.[15]
As a result, we reject Deponents' argument that adopting the whole order approach benefits judicial economy. While considering an additional issue on collateral review might streamline the adjudication of a particular case, applying the whole order approach as a rule would diminish judicial economy by encouraging advocates to find creative ways to obtain collateral review on one, however meritless, issue so as to obtain review of an entire litany of claims. Further, judicial accuracy is better promoted by postponing claimsexcept those directly fitting under Rule 313for post-judgment review.[16]
Thus, we hold the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313. Therefore, we vacate the determination of the Commonwealth Court and remand the matter for further proceedings consistent with this opinion.

Jurisdiction relinquished.
*1131 Chief Justice CASTILLE, Justices SAYLOR, EAKIN, BEAR, McCAFFERY and GREENSPAN join the opinion.
NOTES
[1] Batson notified Appellants that the investigation was closed by letter dated January 10, 2005. The file was subsequently reopened; Appellants assert the file was reopened after and only after the Bureau was pressured to do so by the Association. Smith notified Appellants that the reopened investigation was closed by letter dated August 6, 2005, adding that the Bureau had concluded Appellants violated the law but had chosen to defer prosecution.
[2] The court further held Appellants failed to plead injury; the defense of truth was adequately proved and inadequate to demonstrate relevancy; and, consequently, deposing Deponents would place an unreasonable burden on them under Pa.R.Civ.P. 4011(b) (precluding discovery which "would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party").
[3] Deponents initially assert that Appellants' motion to quash before the Commonwealth Court was inadequate to preserve the issue on which we granted review because the argument was inadequately developed. Brief for Deponents at 18. We disagree; Appellants raised the issue in their motion to quash, and developed it with citation in their brief in support of that motion. See Appellants' Motion to Quash Appeal as Interlocutory And/Or Untimely (filed in Commonwealth Court) at 7, ¶ 31; Brief for [Appellants] Robert Rae and Commonwealth Funeral Consultants, Inc., in Support of Motion to Quash (filed in Commonwealth Court) at 20-21.
[4] Our rule mirrors the federal rule codified at 28 U.S.C.A. § 1291(b).
[5] See Robert J. Martineau, Defining Finality and Appealability by Court Rule: Right Problem, Wrong Solution, 54 U. Pitt. L.Rev. 717, 740-42 (1993).
[6] In that case, Ben sought discovery of the Bureau's records of its investigation of a dentist, in support of his malpractice action against the dentist and his employer.
[7] We again declined to adopt the privilege in Tribune-Review Publ'g Co. v. Dep't of Com. & Econ. Dev., 580 Pa. 80, 859 A.2d 1261 (2004).
[8] Whether an order is appealable under Pa. R.A.P. 313 is a question of law. As such, our standard of review is de novo and our scope of review is plenary. Commonwealth v. Kennedy, 583 Pa. 208, 214 n. 3, 876 A.2d 939, 943 n. 3 (2005).
[9] Our Superior Court has seemingly applied both approaches. Compare Barley v. Conrail, 820 A.2d 740, 743 (Pa.Super.2003) (finding it "prudent to limit [its] scope of review to those portions [of the order under review] that satisfy" the collateral order test) with Merithew v. Valentukonis, 869 A.2d 1040 (Pa.Super.2005) (finding the collateral order test satisfied on the basis of an assertion that the appellant's right to privacy was violated by the trial court's discovery order, and then overturning the order on the basis that the sought documents were irrelevant to the underlying litigation), and Hoffman v. Knight, 823 A.2d 202, 207 (Pa.Super.2003) (applying the importance prong of the collateral order test only to an assertion of privilege before considering the merits of the appellant's argument that his deposition was not in the interests of justice).
[10] As Rule 313 is not free from ambiguity, we look to Pa.R.A.P 107, which dictates the rules of construction for our appellate rules. Rule 107, in turn, states that we are to be guided by the rules of statutory construction in Chapter 19 of Title 1 of the Pennsylvania Consolidated Statutes "as if these rules were enactments of the General Assembly." Pa.R.A.P. 107. Mindful that we are interpreting a rule promulgated by this Court and not a statute enacted by the legislature, in the present matter, we are guided by caselaw from this Commonwealth and federal caselaw addressing the collateral order doctrine generally, which Rule 313 is intended to implement.
[11] In Swint, the Court noted a possible exception to the issue-by-issue approach for issues which are "essential to the resolution of properly appealed collateral orders." 514 U.S. at 51, 115 S.Ct. 1203. As Deponents do not suggest the relevance issue is essential to resolving their privilege claim, we need not consider whether our collateral order jurisprudence supports such an exception in the matter sub judice.
[12] Deponents aver Swint and Abney are distinguishable, as in Swint the issues in question were appealed by different defendants, and in Abney the secondary issuedenial of the defendant's motion to dismiss the indictment for failure to state an offensewas inseparable from the merits of the case. Brief for Deponents at 12. While we grant that the cases are not factually identical, Swint and Abney are grounded in the Court's explicit aversion to permitting parties to "parlay Cohen-type collateral orders into multi-issue interlocutory appeal tickets," not in their particular facts. Swint, 514 U.S. at 49-50, 115 S.Ct. 1203. That concern is equally relevant here, and Deponents' cited factual distinctions make no material difference.
[13] The instant case provides a good example. The Commonwealth Court herein properly applied our unambiguous precedent in Ben, supra, in denying Deponents' assertion of privilege. However, by raising their privilege claim, Deponents secured review of their relevance claim which, otherwise, would likely have been postponed until final judgment that is, the relevance issue arose on collateral appeal only because Deponents bootstrapped it onto an unsuccessful privilege claim and the Commonwealth Court applied the whole order approach to Rule 313.
[14] We recently discussed the harms of piecemeal litigation at length:

[A]voiding piecemeal litigation conserves scarce judicial manpower as well as the time of witnesses, jurors, and the use of public resources. Moreover, this Court has noted that a policy that allows for piecemeal appeals "serves only to increase the cost of litigation, and favors the party with the greater resources, who can strategically delay the action at the expense of the indigent party". Finally, we note that piecemeal litigation, in addition to being inefficient and costly, can often lead to inconsistent results.
Pennsylvania Bankers Ass'n v. Pennsylvania Dep't of Banking, 597 Pa. 1, 14, 948 A.2d 790, 798-99 (2008) (citations omitted); see also Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Jurisdiction of the Courts of AppealsFinal Judgment Rule, 15A Fed. Prac. & Proc. Juris.2d § 3907 (2008) (noting that minimizing piecemeal litigation permits trial proceedings to "continue without interruption," which facilitates the orderly resolution of such proceedings).
[15] Consolidation into post-judgment appeal also facilitates appellate courts' rendering decisions on the narrowest possible grounds, thus "avoid[ing] unnecessary lawmaking." See Note, The Finality Rule for Supreme Court Review of State Court Orders, 91 Harv. L.Rev. 1004, 1006 (1978).
[16] We further reject Deponents' argument that, regardless of what rule we adopt in this case, the Commonwealth Court correctly reached the relevance issue because it was briefed by the parties. "Whether an order is appealable as a collateral order under Rule 313 is an issue of this Court's jurisdiction to entertain an appeal of such an order." Kennedy, 583 Pa. at 215, 876 A.2d at 943. A purely prudential concern, such as whether the parties have briefed the issue, cannot invest an appellate court with jurisdiction which is otherwise lacking.