J-A21006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RODERICK J. MCGIBBON, AS PARENT AND PLENARY PERMANENT GUARDIAN OF THE ESTATE OF IAN MCGIBBON,   AN INCAPACITATED PERSON, AND IN HIS OWN RIGHT, ELIZABETH MCGIBBON, H/W AND ANNE MCGIBBON. | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : : | No. 2706 EDA 2019 |
| v. | : : : : | |
| ALPHA UPSILON CHAPTER OF PI KAPPA PHI FRATERNITY,  PI KAPPA PHI FRATERNITY, AND PHI KAPPA PHI FOUNDATION, AND CAVANAUGH'S RIVER DECK, FRANCO FERRAINA,  ANTHONY FERRO, MATTHEW LAMORGESE,  NICHOLAS PAOLETTI, AND ZACHARY YOUNG | : : : : : : : : : : | |
| APPEAL OF: ALPHA UPSILON CHAPTER OF PI KAPPA PHI FRATERNITY,  PI KAPPA PHI FRATERNITY, AND PHI KAPPA PHI FOUNDATION | : : : : : : | |

Appeal from the Order Entered July 31, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 170702475

| | | |
|---|---|---|
| RODERICK J. MCGIBBON, AS PARENT AND PLENARY PERMANENT GUARDIAN OF THE ESTATE OF IAN MCGIBBON,  AN INCAPACITATED PERSON, AND IN HIS OWN RIGHT, ELIZABETH MCGIBBON, H/W AND ANNE MCGIBBON | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : : | No. 2707 EDA 2019 |
| v. | : : | |

| | : | |
|---|---|---|
| ALPHA UPSILON CHAPTER OF PI KAPPA PHI FRATERNITY, PI KAPPA PHI FRATERNITY, AND PHI KAPPA PHI FOUNDATION AND CAVANAUGH'S RIVER DECK, FRANCO FERRAINA, ANTHONY FERRO, MATTHEW LAMORGESE, NICHOLAS PAOLETTI AND ZACHARY YOUNG | : : : : : : : : : : | |
| APPEAL OF: ALPHA UPSILON CHAPTER OF PI KAPPA PHI FRATERNITY, PI KAPPA PHI FRATERNITY, AND PHI KAPPA PHI FOUNDATION | : : : : : | |

Appeal from the Order Entered August 16, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): No. 170702475

BEFORE: LAZARUS, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    Filed: November 12, 2020

Alpha Upsilon Chapter of Pi Kappa Phi Fraternity, Pi Kappa Phi Fraternity, and Pi Kappa Phi Foundation (collectively, "Fraternity") appeal from the orders, entered in the Court of Common Pleas of Philadelphia County, denying their motion to compel the deposition of Ian McGibbon ("Ian") and their motion to reconsider that order. Upon careful review, we quash both appeals.

The trial court set forth the relevant facts of this matter as follows:

On September 12, 2016, [Ian], a student at Drexel University in Philadelphia, suffered traumatic brain injuries during a late-night altercation at Cavanaugh's River Deck, a local bar. His family brought suit against multiple parties, including [Fraternity], in July of 2017. Ian's father, Roderick J. McGibbon (["McGibbon"]), sued on his own behalf and "as Parent and Plenary Guardian of the Estate of Ian McGibbon, an incapacitated person." The other

- 2 -

plaintiffs are [McGibbon's] wife, Elizabeth McGibbon, and Anne McGibbon. Ian is not himself a plaintiff.

On January 6, 2017, the Orphans' Court Division of the Montgomery County Court of Common Pleas entered a Final Decree stating that [Ian] was adjudged by clear and convincing evidence to be a "totally incapacitated person." Specifically, the court stated, "[t]he [c]ourt finds Ian McGibbon suffers from major neurocognitive disorder due to traumatic brain injury, with behavioral disturbance, a condition that totally impairs his capacity to receive and evaluate information effectively and to make and communicate decisions concerning management of his financial affairs or to meet essential requirements for his physical health and safety."

The [court] appointed [McGibbon] as [p]lenary [p]ermanent [g]uardian of [Ian's estate and person]. . . .

On May 20, 2019, [Fraternity] served on plaintiffs' attorney a notice of deposition as to Ian. There ensued a weeks-long series of telephonic and email communications between counsel about whether and under what conditions Ian might be deposed. Finally, on July 10, 2019, plaintiffs' counsel advised [Fraternity's] counsel that he would not produce Ian for a deposition, citing the Final Decree of the Montgomery County Orphans' Court. [By order dated July 30, 2019, t]he court denied [Fraternity's] motion to compel Ian's deposition and granted plaintiffs' corresponding motion for protective order.

Trial Court Opinion, 1/3/20, at 2-3 (citations to record omitted). Fraternity filed a motion to reconsider that was denied by the trial court on August 16, 2019.

Fraternity filed timely notices of appeal to the trial court's July 30, 2019 and August 16, 2019 orders.[1] Both Fraternity and the trial court have complied with Pa.R.A.P. 1925.

---

[1] By Order dated October 8, 2019, this Court, *sua sponte*, consolidated the appeals docketed at Nos. 2706 and 2707 EDA 2019. **See** Pa.R.A.P. 513

Fraternity raises the following issues for our review:

1. Whether this Court has appellate jurisdiction under Pennsylvania Rule of Appellate Procedure 313(b) over this consolidated appeal from: (a) the trial court's order denying the motion to compel the deposition of the injured person on whose behalf this litigation is brought on the basis that he lacks testimonial competence under Pennsylvania Rule of Evidence 601; and (b) the trial court's denial of a motion for reconsideration based on evidence that became available after the motion to compel was denied, and which evidence the trial court considered?

2. Whether Plaintiffs met their burden to prove, by clear and convincing evidence, testimonial incompetence under Pennsylvania Rule of Evidence 601 sufficient to support the breadth of the trial court's order denying the motion to compel (and granting a protective order) in the face of evidence that Ian McGibbon was both physically and mentally able to attend his deposition and give deposition testimony?

3. Whether Ian McGibbon's deposition should have been allowed in light of new evidence that surfaced, not previously available, after the trial court denied the motion to compel Ian McGibbon's deposition, confirming that McGibbon withstood [] two half-day neuropsychological examination[s] without the need for any medical intervention and in which he was able to competently participate, as well as other evidence that belies the Plaintiffs' assertion that McGibbon is not physically or mentally able to give a deposition?

4. Whether a January 6, 2017 Decree of the Orphan's Court Division—adjudging Ian McGibbon "a totally incapacitated person" within the meaning of Chapter 55 of Title 20 of the Pennsylvania Consolidated Statutes for the purpose of appointing a Plenary Permanent Guardian of his Person and Estate to manage his financial affairs and meet essential requirements for his physical health and safety—is conclusive of whether Ian McGibbon is

---

("Where there is more than one appeal from the same order, or where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal.").

competent to testify under the separate test for testimonial competence under the Pennsylvania Rules of Evidence?

Brief of Appellants, at 6-7.

Prior to addressing the merits of Fraternity's substantive claims, we must determine whether these appeals are properly before this Court.[2]  Here, Fraternity appeals an order denying a discovery motion to compel a deposition and the order denying reconsideration of that discovery order.

An appeal properly lies only from a final order unless otherwise permitted by rule or statute.  *McCutcheon v. Philadelphia Elec. Co.*, 788 A.2d 345 (Pa. 2002). Pursuant to Pennsylvania Rule of Appellate Procedure 313(a), "[a]n appeal may be taken as of right from a collateral order of an administrative agency or lower court."  Pa.R.A.P. 313(a).  The collateral order doctrine is "a specialized, practical application of the general rule that only final orders are appealable as of right."  *Spanier v. Freeh*, 95 A.3d 342, 345 (Pa. Super. 2014).  "Under Rule 313(b), a collateral order is an order that: (1) is separable from and collateral to the main cause of action; (2) involves

_____

[2] On October 17, 2019, this Court issued two orders directing Fraternity to show cause why its appeals should not be quashed.  At docket number 2706 EDA 2019, pertaining to the Fraternity's appeal of the court's July 30, 2019 order denying its motion to compel deposition and granting McGibbon a protective order, Fraternity was directed to show cause why the appeal should not be quashed, as it "may not be final or appealable as a collateral order." Order to Show Cause at 2706 EDA 2019, 10/17/19, at 1.  At docket number 2707 EDA 2019, pertaining to the court's August 13, 2019 order denying reconsideration, Fraternity was directed to show cause why its appeal should not be quashed, as it "may be improperly filed from an order denying a motion for reconsideration."  Order to Show Cause at 2707 EDA 2019, 10/17/19, at 1.  Both Fraternity and McGibbon filed responsive pleadings to the rules to show cause and the matters were referred to the merits panel for disposition.

a right too important to be denied review; and (3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost." *In re Bridgeport Fire Litig.*, 51 A.3d 224, 230 n.8 (Pa. Super. 2012). *See also Commonwealth v. Harris*, 32 A.3d 243, 251 (Pa. 2011); *Rae v. Pa. Funeral Dir. Ass'n*, 977 A.2d 1121, 1125 (Pa. 2009); *Ben v. Schwartz*, 729 A.2d 547, 550 (Pa. 1999); *Brown v. Greyhound Lines, Inc.*, 142 A.3d 1, 6 (Pa. Super. 2016). "A discovery order is collateral only when it is separate and distinct from the underlying cause of action." *Brown*, 142 A.3d at 6. Further, "[i]n determining whether the right involved is too important to be denied review, it must be determined whether the right is deeply rooted in public policy such that it goes beyond the controversy at hand." *Id.* at 6-7. The collateral order doctrine "is to be administered narrowly, in a manner which does not unduly undermine the general policy against piecemeal appeals." *Dougherty v. Heller*, 138 A.3d 611, 628 (Pa. 2016) (per curiam).

We begin with the first prong of the collateral order doctrine— separability. Our Supreme Court has noted that

> a claim is sufficiently separate from the underlying issues for purposes of collateral order review if it is conceptually distinct from the merits of the plaintiff[']s claim, that is, where even if practically intertwined with the merits, it nonetheless raises a question that is significantly different from the questions underlying plaintiff's claim on the merits.

*Pridgen v. Parker Hannifin Corp.*, 905 A.2d 422, 433 (Pa. 2006) (internal quotation marks and citation omitted).

Here, in rendering its decision on the motion to compel deposition, the trial court was required to consider the nature, extent, and impact of the injuries Ian sustained in the incident giving rise to the underlying action. In that way, the instant claim is "practically intertwined" with the merits of McGibbon's underlying tort claims. ***See id.*** However, the limited inquiry necessary for the court's disposition of the motion to compel—whether Ian's condition renders him incompetent to give testimony—is "conceptually distinct" from the merits of the underlying claim, i.e., whether, and to what extent, Fraternity and the other defendants should be held liable for Ian's injuries. Accordingly, we conclude that Fraternity has satisfied the first prong of the collateral order test.

Turning to the second prong, we must determine whether the issue raised by Fraternity's claim is of such importance that review cannot be denied. More specifically, we must determine whether the issue involves "rights deeply rooted in public policy going beyond the particular litigation at hand." ***Spanier***, 95 A.3d at 346.

Here, Fraternity argues that its claim is important beyond the facts of this particular case "because the issues pit the rights of defendants to defend against tort claims, including those in which punitive damages are sought, against the rights of injured tort victims who claim their injuries have rendered them incapacitated within the meaning of [the PEF Code]—but not necessarily incompetent to testify." Brief of Appellant, at 30. It also "pits the defendants' right to adequately defend against such claims against an injured tort victim's

rights to not jeopardize [his] health or to [not be] put through the burden of a deposition if the witness lacks any testimonial competence[.]" *Id.* Fraternity asserts that our Supreme Court "has held that such issues meet the collateral-order rule's importance prong." *Id.* at 30, citing *Commonwealth v. Shearer*, 882 A.2d 462, 469 (Pa. 2005). Finally, Fraternity asserts that the issue in question implicates this Commonwealth's "deeply rooted public policy of protecting injured tort victims, while simultaneously ensuring the constitutional Due Process rights of defendants against whom punitive damages are sought for such injuries." Brief of Appellant, at 30-31.

In response, McGibbon asserts that the "supposed right that [Fraternity] invoke[s] here—to take the testimonial deposition of the victim of their tortious act—simply is not a right deeply rooted in public policy." Brief of Appellee, at 30. McGibbon analogizes this case to those in which a defendant's conduct has caused the death of the victim, or where the victim is too young to testify, and notes that such lawsuits are allowed to proceed "even though no questioning of the victim can occur." *Id.* McGibbon argues that the trial court's decision here was "of an individualized, fact-sensitive nature" and, thus, "the matter is not one of such broad public importance as to justify an immediate as-of-right appeal." *Id.*, quoting *Dougherty*, 138 A.3d at 630-31 (holding generalized claim that public disclosure of videotaped deposition could infringe upon appellant's privacy or cause him embarrassment insufficient to raise type of issue which is "too important to be denied review" under collateral order doctrine).

We agree with McGibbon that the right invoked by Fraternity is not one that is deeply rooted in public policy going beyond the instant litigation. The sole case upon which Fraternity relies, *Shearer*, *supra*, is readily distinguishable. In that case, the defendant was charged with numerous sexual offenses against his four-year-old nephew. The Commonwealth filed a notice pursuant to the Tender Years Hearsay Act, 42 Pa.C.S. § 5985.1, notifying the trial court and defendant of its intention to introduce videotaped testimony from the victim. In response, the defendant filed a motion to examine the minor victim for competency, requesting that the victim be evaluated by a psychologist to determine whether he was competent to testify. Without first holding a traditional competency inquiry, the trial court granted defendant's motion and directed the victim to submit to an examination.[3] The Commonwealth appealed to this Court pursuant to Pa.R.A.P. 311(d), certifying that the trial court's order would terminate or substantially hamper its case. It also raised an alternative collateral order argument under Rule 313. A panel of this Court quashed the appeal as interlocutory, concluding that the order was not appealable under Rule 311(d), and an en banc panel of the Court affirmed. Neither the panel, nor the Court en banc, considered the Commonwealth's argument pursuant to Rule 313.

_____

[3] The Commonwealth filed a motion for reconsideration, which the trial court denied; however, the court directed the psychologist to confine the examination to determining whether the victim could "give a correct account of the matters that the witness has seen or heard regarding the incidents alleged." *Shearer*, 882 A.2d at 465.

On allowance of appeal, the Supreme Court agreed that the order was not appealable under Rule 311(d). However, the Court concluded that the order met the standard for appeal as a collateral order pursuant to Rule 313. In determining whether the Commonwealth's claim implicated rights too important to be denied review, the Court began its analysis by setting forth the Commonwealth's underlying claim, i.e., that the trial court "should have attempted to ascertain in a traditional competency hearing[4] whether [the victim] was competent to testify prior to ordering [him] to undergo a psychological examination designed to assist in the competency determination." *Shearer*, 882 A.2d at 469. The Court concluded that the trial court's order "raises justifiable concerns regarding the extent to which minors should be required to submit to potentially unnecessary examinations in furtherance of trial courts' competency determinations." *Id.* at 470. The Court stated: "[I]t is beyond question that this Commonwealth maintains a deeply rooted public policy of protecting minor victims of crime, and the Commonwealth's appeal raises potentially valid concerns as to whether the trial court's order undermines this public policy." *Id.* (internal citation

---

[4] The Court noted that the usual procedure for determining the competency of a minor witness involves the questioning of the minor by either the trial court or the district attorney aimed at ascertaining whether the minor is able to understand the difference between right and wrong, as well as his obligation to speak truthfully. Based upon the minor's responses, the court makes a determination as to the child's competency to testify. *See Shearer*, 882 A.2d at 470-71.

- 10 -

omitted). Accordingly, the Court concluded that the Commonwealth's claim satisfied the second prong of the collateral order test.

Contrary to the scenario in **Shearer**, here, Fraternity does not seek to vindicate the right of a minor victim to be free of unnecessary examinations. Rather, it seeks to subject the legally incapacitated victim to a potentially fruitless and damaging examination. It cannot be argued that the Commonwealth maintains a deeply-rooted interest in subjecting brain-injured tort victims to depositions, such that Fraternity's claim implicates a right that goes beyond the instant litigation.

Fraternity also claims—without citation to authority—that the right of defendants to defend against tort claims raises an issue so deeply rooted in public policy so as to satisfy the second prong of the collateral order doctrine. However, Fraternity's expert neuropsychologist has had the opportunity to examine Ian, and McGibbon will not be presenting Ian's testimony at trial. As McGibbon correctly points out in his brief, there are many instances in which alleged tortfeasors must defend against claims in which the injured party is either deceased or incompetent to testify. In this case, the trial court's ruling was firmly grounded in, and limited to, the very specific facts of this case. For these reasons, we conclude that Fraternity has failed to satisfy the importance prong of the collateral order doctrine.

Because each one of the three prongs must be "clearly present" before collateral appellate review is allowed, **Shearer v. Hafer**, 177 A.3d 850, 858 (Pa. 2018), Fraternity is unable to satisfy the requirements of the collateral

order doctrine and its appeal must be quashed. However, in the interest of completeness, we will address the third and final prong—whether, if review is postponed until final judgment, Fraternity's right to depose Ian will be irreparably lost. Fraternity argues that, without taking Ian's deposition, it "will have no way to put together an offer of proof to even preserve the error for appellate review," and, thus, its ability to obtain meaningful appellate review would be hampered. Brief of Appellant, at 31. Moreover, Fraternity argues, even if it were able to demonstrate reversible error on appeal,

> remand for a new trial may come too late. . . . Because of the vagaries of traumatic brain injury, . . . whether [Ian] would remain competent to testify, or remain physically and mentally able to attend a deposition and give testimony on remand for a new trial many months or even years down the road is pure speculation.

*Id.* at 33.

McGibbon counters that Fraternity's argument is "based wholly on speculation" that "if appellate review is postponed until final judgment, perhaps [Ian] might lose whatever supposed ability he now has to testify." Brief of Appellee, at 36. Unlike claims involving attorney-client privilege in which "there is no ability to reinstate the pre-disclosure status quo if appellate review is made to await the entry of a final judgment," a speculative claim such as that argued by Fraternity, "has never sufficed to make a non-final order immediately appealable." *Id.* McGibbon argues that **Shearer**, the sole case upon which Fraternity relies, is readily distinguishable. There, the Court found that, once the victim is compelled to submit to an examination, "there

is no way to turn back the clock[.]" ***Shearer***, 882 A.2d at 469. Here, in contrast, if Fraternity can establish an abuse of discretion by the trial court, an appellate court will be able to fully and completely vindicate Fraternity's entitlement to Ian's deposition by ordering a new trial.

We agree with McGibbon that Fraternity's claim does not satisfy the irreparability prong of the collateral order doctrine. First, Fraternity's assertion with regard to Ian's future ability to provide deposition testimony is, in fact, purely speculative. ***See Shearer***, 882 A.2d at 468 (rejecting Commonwealth's reliance on "pure speculation" in support of argument for immediate appeal under Rule 311(d)). There is no evidence in the record to suggest that Ian's health is currently in a state of decline, or will be at any time in the future. Second, unlike in ***Shearer***—or the many cases involving privilege—where enforcement of the trial court's order would result in an inability to "turn back the clock," here, Fraternity maintains the ability to seek appellate review after the entry of a final order, as it would with respect to any discovery issue.

For the foregoing reasons, we are constrained to quash as interlocutory Fraternity's appeal from the trial court's denial of its motion to compel deposition. Similarly, Fraternity's appeal from the trial court's denial of its motion to reconsider its interlocutory discovery order must also be quashed, as such an order is not reviewable on appeal. ***See Goodman by Goodman v. Pizzutillo***, 682 A.2 363 (Pa. Super. 1996) (quashing appeal of denial of reconsideration of interlocutory order as "not subject to review on appeal");

***Edney v. Southeastern Pa. Transp. Auth.***, 514 A.2d 194, 195 (Pa. Super. 1986) (holding denial of reconsideration of interlocutory order not subject to appeal).

Appeals quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/12/20